IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LAURETO JULIAN GASPAR and ARNIDA FELIPE GASPAR, on their own behalf and on behalf of all those similarly situated, | ) ) ) ) ) | CIVIL NO. 10-00323 JMS/BMK<br><br>AMENDED ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| BANK OF AMERICA, N.A., a National Association; BAC HOME LOANS SERVICING, LP; and DOES 1-10, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**AMENDED ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

**I. INTRODUCTION**

On February 24, 2010, Plaintiffs Laureto Julian Gaspar and Arnida

Felipe Gaspar ("Plaintiffs") filed this action on their own behalf as well as on the

behalf of all those similarly situated[1] against Defendants Bank of America, N.A.

("BOA") and BAC Home Loans Servicing, LP ("BAC") (collectively

"Defendants"), alleging state law claims stemming from a mortgage transaction

and a subsequent nonjudicial foreclosure concerning real property located at 94-

870 Lumiauau Street, #L-106, Waipahu, Hawaii 96797 (the "subject property").

---

[1] The parties make no arguments at this time regarding class certification and the court therefore focuses on the allegations as they relate to Plaintiffs.

Currently before the court is Defendants' Motion to Dismiss, in which they argue that Plaintiffs have failed to state any cognizable violation of Hawaii state law.  Based on the following, the court GRANTS Defendants' Motion to Dismiss and issues this Amended Order Granting Defendants' Motion to Dismiss.[2]

## II.  BACKGROUND

### A.    Factual Background

As alleged in the Complaint, in July 1991, Plaintiffs purchased the subject property for $99,000, and secured a mortgage from Honolulu Mortgage Co., which was later acquired by BOA.  Compl. ¶ 19.  Plaintiffs timely made their mortgage payments, but on November 27, 2009 they nonetheless received a "Notice of Intent To Accelerate" from BOA's servicing agent, BAC, asserting that the mortgage loan was in arrears in the amount of $6,301.84.  *Id.* ¶ 21.  Plaintiffs notified BAC that the mortgage loan had been paid current, and in response BAC promised to perform an investigation.  *Id.* ¶ 22.  Plaintiffs contend that BOA's error in losing and/or misapplying Plaintiffs' payments may have been due to BOA

---

[2]  The court originally issued its Order Granting Defendants' Motion to Dismiss on October 14, 2010, but now withdraws that Order and issues this Amended Order.  The Amended Order corrects a typo at page 16 of the original Order, to state that "Because this language provides no requirements regarding the *content* of the notice, Defendants' reference to a Website for further instructions does not appear to violation this provision."  In all other respects, this Amended Order is the same as the original Order.

and/or BAC changing Plaintiffs' loan account number and the address where payments were to be sent. *Id.* ¶ 39.

Despite BAC's promise to investigate, on January 22, 2010, Plaintiffs received a "Notice Of Mortgagee's Intention To Foreclose Under Power of Sale," which notified Plaintiffs that a nonjudicial foreclosure auction would be held at noon on March 23, 2010 (the date was subsequently changed to April 22, 2010). *Id.* ¶ 23.  The Notice instructed prospective bidders to go to a Website for additional bidding and sale instructions, and the Website required the successful bidder to deposit the full purchase price within twenty-one days of the auction. *Id.* ¶ 24.  The Complaint asserts that requiring full payment within twenty-one days of the auction and providing instructions via a Website may have reduced the number of potential bidders. *Id.* ¶ 27.

After receiving this Notice, on January 29, 2010, Plaintiffs received a written solicitation from BOA and/or BAC to apply for a loan modification. *Id.* ¶ 29.  When Plaintiffs called BAC again, they were told not to worry about the foreclosure, that they could apply for a loan modification during which time the foreclosure would be halted, and that they need not make further monthly loan payments during the loan modification process. *Id.* ¶ 30.

On March 13, 2010, Plaintiffs received a "Reinstatement Calculation,"

claiming that their mortgage loan was now seven months in arrears and requesting $17,974.81 to bring the loan current. *Id.* ¶ 31. On April 16, 2010, Plaintiffs received a letter notifying them that their loan modification request was denied. *Id.* ¶ 33. Plaintiffs later learned that the subject property was sold at auction on April 22, 2010 to a third party for $184,000, which is much less than the subject property's $246,400 assessed value. *Id.* ¶¶ 34-35.

**B.    Procedural Background**

On May 3, 2010, Plaintiffs filed their Complaint in the First Circuit Court of the State of Hawaii, and Defendants subsequently removed this action to this court on the basis of diversity jurisdiction. The Complaint alleges claims titled (1) Declaratory Judgment [] Re: Prevention of and Wrongful Nonjudicial Foreclosure Against BOA/BAC (Count I); (2) Declaratory Judgment [] Re: Common Law Contract Damages Against BOA/BAC (Count II); (3) Declaratory Judgment [] Re: Chapter 480 HRS Treble Damages Against BOA/BAC (Count III); (4) Injunctive Relief [] Against BOA/BAC and Does (Count IV); (5) Punitive Damages [] Against BOA/BAC (Count V); and (6) An Accounting [] Against BOA/BAC (Count VI).

On July 2, 2010, Defendants filed their Motion. Plaintiff filed an Opposition on September 7, 2010, and Defendants filed a Reply on September 14,

2010.  A hearing was held on September 28, 2010.  Due to the arguments presented at the hearing, the court required, and the parties provided, supplemental briefing on October 5, 2010.

## III.  <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 556).  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader

is entitled to relief.  *Id.* at 1950.

## IV.  <u>DISCUSSION</u>

Defendants argue that Plaintiffs' claims should be dismissed for a variety of reasons.  The court addresses Plaintiffs' claims in turn.

## A.     Counts I-III:  Declaratory Judgment

Defendants argue, among other things, that Counts I through III of the Complaint must be dismissed because they are improperly couched as claims for declaratory relief.  Based on the following, the court agrees and dismisses these counts.  The court also addresses Defendants' alternative argument that Counts I and II fail to allege a claim upon which relief may be granted so that if Plaintiffs choose to file an amended complaint, they are aware of all of the Complaint's deficiencies raised by Defendants.[3]

### *1.     Declaratory Relief*

Counts I through III each appear to assert claims for a declaratory judgment, as follows:

> <u>Count I</u>: Plaintiffs "seek a declaratory judgment that such nonjudicial foreclosure auction sales and said transfers to

---

[3]  Beyond the argument addressed below, Defendants further argue that Count III, alleging a violation of Hawaii Revised Statutes ("HRS") Ch. 480, must be dismissed because HRS § 480-13 provides a comprehensive scheme of remedies.  Given the court's determination that Plaintiffs cannot allege a claim for declaratory relief based on the present facts asserted, the court need not address this argument.

a third party are "void and unenforceable as procured in violation of [Plaintiffs'] contract rights and federal and state law, entitling them [] to have such title transfers set aside and to an award of actual damages, including attorneys' fees and costs . . . ." Compl. ¶ 42.

Count II: Plaintiffs "seek a declaratory judgment that they have timely performed all of their contractual payment obligations to BOA/BAC, yet BOA/BAC have breached their contractual obligations to them by misapplying their payments and accelerating and foreclosing on them when their mortgage loan was not in default, with entitlement to actual damages for material breach of contract and wrongful rejection of tender against BOA/BAC, including attorneys' fees and costs . . . ." *Id.* ¶ 43.

Count III: Plaintiffs "seek a declaratory judgment that such acts complained of above in violation of Section 667.5.7 of the Hawaii Revised Statutes, and individually as to them for misapplied payments constitute unfair and deceptive acts and practices against elders and/or against consumers, as defined in Chapter 480 of the Hawaii Revised Statutes, entitling them and Plaintiff Class and Sub-Classes to an award of actual or treble damages against BOA/BAC, including attorneys' fees and costs . . . ." *Id.* ¶ 44.

As presently phrased, these claims make unclear whether Plaintiffs are seeking a declaratory judgment on their rights as to the subject property, a declaratory judgment that they are entitled to damages, or both a declaratory judgment and damages. On this basis alone, these claims fail to provide the Defendants notice of precisely what Plaintiffs seek.[4]

---

[4] The parties do not address, and the court need not determine at this time, whether

(continued...)

## 2.      *Breach of Contract*

Defendants argue that the allegations supporting Counts I and II are insufficient to state a claim for breach of contract.  The court agrees.

The Complaint fails to identify the particular contract at issue, and precisely what provision of the contract was violated.  While presumably the contract at issue is the mortgage loan and some provision likely provides that Defendants will not seek to foreclose so long as Plaintiffs make timely payments, Defendants are not required to connect the dots through inference or search

---

[4](...continued)

Plaintiffs can seek declaratory relief as part of their class action.  To the extent Plaintiffs allege these claims on their own behalf as seeking a declaratory judgment, however, a declaratory judgment is not the proper vehicle to seek redress for Defendants' alleged wrongful actions "where an adequate remedy exists under some other cause of action."  *Tate v. Indy Mac Bank FSB*,  2010 WL 3489181, at *4 (C.D. Cal. Sept. 3, 2010); *see also Seattle Audubon Soc. v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996) ("A declaratory judgment offers a means by which rights and obligations may be adjudicated in cases brought by any interested party involving an actual controversy that has not reached a stage at which either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not yet done so." (citation and quotation signals omitted)).  Because Plaintiffs' claims are based on allegations regarding Defendants' failure to credit Plaintiffs' mortgage payments and the nonjudicial foreclosure that occurred several months ago, Plaintiffs seek to redress Defendants' alleged past wrongs and declaratory relief is improper.  *See Ruiz v. Mortg. Elec. Registration Sys., Inc.*, 2009 WL 2390824, at *6 (E.D. Cal. Aug. 3, 2009) (dismissing claim for declaratory judgment where foreclosure already occurred such that the plaintiff was seeking "to redress past wrongs"); *Edejer v. DHI Mortg. Co.*, 2009 WL 1684714, at *11 (N.D. Cal. June 12, 2009) ("Plaintiff's declaratory relief cause of action fails because she seeks to redress past wrongs rather than a declaration as to future rights.  The foreclosure sale has already taken place, and therefore the claimed invasion of right has already occurred."); *Metcalf v. Drexel Lending Grp.*, 2008 WL 4748134, at *6 (S.D. Cal. Oct. 29, 2008) ("Based on the FAC's allegations, declaratory relief does not appear appropriate at this time.  Because the foreclosure sale has taken place, the claimed invasion of right has already occurred.  Accordingly, the proper avenue for Metcalf is to seek redress through a claim for money damages.").

through the Complaint's multiple exhibits to determine what provision Plaintiffs

assert is violated.  Rather, the Complaint itself must contain sufficient allegations

to show that relief is plausible.  Indeed, "[i]n breach of contract actions, [] the

complaint must, at minimum, cite the contractual provision allegedly violated.

Generalized allegations of a contractual breach are not sufficient."  *Otani v. State

Farm Fire & Cas. Co.*, 927 F. Supp. 1330, 1335 (D. Haw. 1996).  The Complaint

includes no such particularized allegations.  Accordingly, the court finds that the

Complaint fails to state a claim for breach of contract.

### 3.      *Violation of Federal and State Law*

To the extent Count I alleges violations of "federal and state law," it

fails to state a claim because it fails to identify the particular law violated.  By

failing to put forth any specific factual or legal allegations -- and link those

allegations to the particular statutory violations -- Plaintiffs do not provide

Defendants with fair notice of which federal and state laws they have allegedly

violated and are the basis of this claim.  Further, while Count I incorporates by

reference the general allegations of the Complaint, even the general allegations of

the Complaint fail to state a cognizable violation of either federal or state law.  The

only law referred to in the Complaint is that Defendants allegedly violated Hawaii

Revised Statutes ("HRS") Ch. 667 by requiring a full payment within twenty-one

days of the auction, and by requiring potential bidders to visit a Website to learn additional rules to bidding.  Compl. ¶ 27.  As the court explains below, neither of these allegations state a violation of HRS Ch. 667.

>    a.    *Requiring full payment within twenty-one days of the auction*

The rules for the auction outline that the successful bidder is required to make a ten percent down payment at the auction, and then pay the balance of the purchase price no later than twenty-one days after the sale.  Compl. Ex. 4.  The subject property would then be transferred via quitclaim deed to the successful bidder within thirty days of the auction.  *Id.*  The Complaint alleges that Defendants' requirement that the successful bidder make full payment prior to closing violates HRS § 667-5.7.  *Id.* ¶ 27.  In comparison, Defendants argue that this claim should be dismissed because § 667-5.7 does not limit when, after the auction but before the closing, a mortgagee can require full payment of the purchase price.

The parties' dispute raises an issue of statutory construction, and the court therefore turns first to the language of § 667-5.7.  *See State v. Mainaaupo*, 117 Haw. 235, 247, 178 P.3d 1, 13 (2008) ("When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself."

(citation and quotation signals omitted)).  Section 667-5.7 provides:

> At any public sale pursuant to section 667-5, the successful bidder at the public sale, as the purchaser, shall not be required to make a downpayment to the foreclosing mortgagee of more than ten per cent of the highest successful bid price.

By beginning with the prepositional phrase "[a]t any public sale pursuant to section 667-5," § 667-5.7 limits the percent down payment a mortgagee can require *at the public sale*.  In other words, this modifying phrase acts as a temporal limitation and qualifies the words that follow -- according to its plain language, § 667-5.7 provides that at the public sale, a mortgagee cannot require the successful bidder to pay more than a ten percent down payment.  But § 667-5.7 is silent regarding when, after the auction, a mortgagee can demand the remaining purchase price.[5]

Had the legislature omitted the prepositional phrase "[a]t any public sale pursuant to section 667-5," the statute would arguably be ambiguous because the phrase "the successful bidder at the public sale" could be read to refer only to

---

[5]  Plaintiffs argue that § 667-5.7 is "clearly ambiguous" because it is unclear whether the "public sale" in § 667-5.7 refers to the auction only, or the entire nonjudicial foreclosure process, which includes the auction and continues until the mortgagee files a notice of sale in the bureau of conveyances.  The court disagrees -- § 667-5.7 refers to "the successful bidder at the public sale," meaning that the "public sale" is the auction.  That the "public sale" refers to the auction and not the entire process is further supported by reading § 667-5.7 in context with the other provisions in this Part, which require the mortgagee to take various actions before and after the "day of sale."  *See* HRS § 667-5; *see also Mainaaupo*, 117 Haw. at 247, 178 P.3d at 13 (stating that the court "must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose").

the successful bidder and thus exclude any temporal limitation.  The inclusion of

the prepositional phrase, however, can be read only as a temporal limitation -- that

is, the limitation on the down payment applies solely to the time of the public sale.

Otherwise, the prepositional phrase would be superfluous.  *See Tax Appeal of Dir.*

*of Taxation v. Med. Underwriters of Cal.*, 115 Haw. 180, 196, 166 P.3d 353, 369

(2007) ("It is a cardinal rule of statutory construction that courts are bound, if

rational and practicable, to give effect to all parts of a statute, and that no clause,

sentence, or word shall be construed as superfluous, void, or insignificant if a

construction can be legitimately found which will give force to and preserve all the

words of the statute." (citations omitted)).

Based on the analysis above, the court finds that the plain language of

§ 667-5.7 creates no requirement limiting when, after the public sale, the

mortgagee can demand payment of the balance.  Given the plain language of

§ 667-5.7, any discussion of legislative history is unnecessary.  As the Hawaii

Supreme Court has explained "[i]t is a cardinal rule of statutory interpretation that,

where the terms of a statute are plain, unambiguous and explicit, we are not at

liberty to look beyond that language for a different meaning.  Instead, our sole duty

is to give effect to the statute's plain and obvious meaning." *T-Mobile USA, Inc. v.*

*County of Haw. Planning Comm'n*, 106 Haw. 343, 352-53, 104 P.3d 930, 939-40

(2005) (quoting *State v. Mueller*, 102 Haw. 391, 394, 76 P.3d 943, 946 (2003)); *see*

*Mainaaupo*, 117 Haw. at 247, 178 P.3d at 13 ("Absent an absurd or unjust result,

*see State v. Haugen*, 104 Haw. 71, 77, 85 P.3d 178, 184 (2004), this court is bound

to give effect to the plain meaning of unambiguous statutory language and may

only resort to the use of legislative history when interpreting an ambiguous

statute." (citation and quotation signals omitted)); *see also Carlisle v. One (1)*

*Boat*, 119 Haw. 245, 259, 195 P.3d 1177, 1191 (2008).

The court also finds, however, that even if § 667-5.7 was at all

ambiguous, the legislative history provides Plaintiffs no relief.  The Senate

Committee on Consumer Protection and Commerce expressly considered, and

rejected including a provision outlining when a mortgagee could require full

payment.  Specifically, the Committee removed a provision providing that the

balance of the successful bid price would be due within ninety days following the

sale.  *See* Senate Stand. Com. Rep. No. 3422, *available at*

http://www.capitol.hawaii.gov/session2006/commreports/hb3100_SD1_sscr3422_.

htm.  By deciding to delete this provision, it appears that the legislature intended to

leave open when, after the auction, the mortgagee could demand full payment.[6]

---

[6] The House Committee on Consumer Protection and Commerce also considered
limiting the down payment requirement to not more than twenty-five percent of the highest
successful bid, and ultimately amended the bill to limit the requirement even more, by limiting

(continued...)

13

The court therefore finds that Plaintiffs cannot allege a violation of § 667-5.7 based on Defendants' requirement that the successful bidder make full payment within twenty-one days after the auction.

In opposition, Plaintiffs make a policy argument -- HRS § 667-5.7 should be construed to prevent the mortgagee from requiring the successful bidder to pay more that ten percent of the total price at any time prior to closing because requiring full payment prior to closing dissuades potential bidders.  Pls.' Opp'n 9. To construe § 667-5.7 as preventing a mortgagee from requiring full payment before closing would violate another "cardinal" canon of construction that a "court cannot change the language of the statute, supply a want or enlarge upon it in order to make it suit a certain state of facts."  *T-Mobile USA, Inc.*, 106 Haw. at 353, 104

---

[6](...continued)
the down payment requirement to ten percent.  The Committee explained that this limitation will "increase the number of people able to bid on the property at the foreclosure sale," which "will allow the property to be sold for a higher price and reduce the chances that there will be a deficiency judgment against the mortgagor."  *See* House Stand. Com. Rep. No. 670-06, *available at* http://www.capitol.hawaii.gov/session2006/commreports/HB3100_HD1_HSCR670-06_.htm. There is no mention, however, regarding when the balance would be due, much less any other statements that would otherwise support Plaintiffs' proffered interpretation of § 667-5.7. Further, while the legislative history evinces a general intent to increase bidders at these auctions, such intent is in line with the general purposes of the statute the Hawaii Supreme Court identified, which are to (1) "protect the debtor from a wrongful loss of property," (2) "ensure that *properly conducted sales* are final between the parties and conclusive as to bona fide purchasers," and (3) "give creditors a quick, inexpensive remedy against defaulting debtors." *Lee v. HSBC Bank USA*, 121 Haw. 287, 291, 218 P.3d 775, 779 (2009) (citation and quotation signals omitted).  Defendants' requirement that full payment be made within twenty-one days after the auction does not appear to conflict with any of these purposes, especially where the Committee took out any requirements regarding when full payment was required.

14

P.3d at 940 (quotation and citation signals omitted).  The legislature, not this court, makes such policy decisions.  Further, while the court recognizes that in ordinary property sales full payment occurs at closing, this is a nonjudicial foreclosure where the mortgagee was trying to recover on the mortgage loan.  Plaintiffs offer no explanation why, under these circumstances, Defendants' actions of requiring full payment twenty-one days after the auction and nine days before closing conflicts with the intent of this statute.[7]

In sum, the court finds that Defendants' requirement that the successful bidder pay the balance of the successful bid within twenty-one days after the auction does not violate § 667-5.7.

b.      *Requiring notice of foreclosure*

Plaintiffs argue that Defendants violated HRS § 667-5 by using a notice of foreclosure that referred to a Website for additional auction instructions.  Defendants argue, and the court agrees, that HRS § 667-5 does not proscribe this practice.

Contrary to Plaintiffs' argument, nothing in HRS § 667-5 requires  a notice to include all bidding instructions.  Section 667-5 provides that the attorney

---

[7]  While there could potentially be circumstances where a mortgagee's actions substantially violate the purpose of § 667-7.5 by, for example, requiring full payment within twenty-four hours after the auction, the court is not presented with such facts.

15

representing the mortgagee must:

> (1) Give notice of the mortgagee's, successor's, or person's intention to foreclose the mortgage and of the sale of the mortgaged property, by publication of the notice once in each of three successive weeks (three publications), the last publication to be not less than fourteen days before the day of sale, in a newspaper having a general circulation in the county in which the mortgaged property lies; and
> (2) Give any notices and do all acts as are authorized or required by the power contained in the mortgage.

HRS § 667-5(a). Because this language provides no requirements regarding the *content* of the notice, Defendants' reference to a Website for further instructions does not appear to violate this provision.

That § 667-5 does not prevent a mortgagee from issuing a notice that refers potential bidders to a Website for further instruction is further supported by reading § 667-5 in context with the other provisions in HRS Chapter 667. For example, in comparison to § 667-5, § 667-27, governing the alternate power of sale foreclosure process, specifically provides that a public notice include "the terms and conditions of the public sale." HRS § 667-27(a)(9). The Hawaii Legislature could have chosen to include such language in § 667-5, but did not. *See In re Water Use Permit Applications*, 94 Haw. 97, 151, 9 P.3d 409, 463 (2000) (recognizing rule of statutory construction that "[w]here [the legislature] includes particular language in one section of a statute but omits it in another section of the

16

same Act, it is generally presumed that [the legislature] acts intentionally and

purposely in the disparate inclusion or exclusion." (citation and quotation signals

omitted)); *see also Singh v. Holder*, 591 F.3d 1190, 1195 (9th Cir. 2010).

Finally, neither party points to anything in the legislative history, and

the court could not find anything either, that suggests the Hawaii Legislature

intended HRS § 667-5 to require a mortgagee to include all terms of an auction

within the notice.  Accordingly, the court finds that Plaintiff cannot state a claim

that Defendants violated HRS § 667-5 by referring potential bidders to a Website

for further auction instructions.

## B.      Count VI:  an Accounting

Count VI asserts that Plaintiffs are entitled to an "accounting of their

mortgage loan and of all of the expenses charged and/or all of the monies collected

and taken as a result of said unlawful nonjudicial foreclosures . . . and the right to

inspect the relevant books and records of said Defendants."  Compl. ¶ 47.

Defendants argue that this claim should be dismissed because they had no duty to

Plaintiffs that would support the extraordinary remedy of an equitable accounting

and there are adequate remedies at law.  Based on the following, the court agrees

that this claim fails to state a claim upon which relief may be granted.

"The action of accounting is designed to provide a remedy to compel

17

a person who, by virtue of some confidential or trust relationship, has received or been entrusted with money or property belonging to another or which is to be applied or disposed of in a particular manner, to render an account thereof." *Block v. Lea*, 5 Haw. App. 266, 277, 688 P.2d 724, 732-33 (1984) (quoting 1 Am. Jur. 2d Accounts & Accounting § 45 (1962)).  "The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies is . . . the absence of an adequate remedy at law." *Porter v. Hu*, 116 Haw. 42, 55, 169 P.3d 994, 1007 (Haw. App. 2007) (citation and quotation signals omitted).

The Complaint contains no facts explaining why Plaintiffs are entitled to an equitable accounting from Defendants.  Although Defendants were Plaintiffs' mortgagee and/or mortgagee servicer, a mortgagee does not have a "confidential or trust relationship" with its mortgagor unless the mortgagee exceeds its role as a lender of money.  *See, e.g.*, *Gzell v. Novastar Mortg., Inc.*, 2010 WL 3293537, at *10 (E.D. Cal. Aug. 19, 2010) ("A financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." (quotation and citation signals omitted)); *Lane v. Vitek Real Estate Indus. Grp.*, --- F. Supp. 2d ---, 2010 WL 1956707, at *10 (E.D. Cal. May 13, 2010) (dismissing breach of fiduciary duty claim because plaintiff failed to plead facts to "override the

18

presumption that a lender owes no fiduciary duty to its borrowers"); *Mulato v. WMC Mortg. Corp*., 2010 WL 1532276, at *2 (N.D. Cal. Apr. 16, 2010) (dismissing claim where plaintiff failed to plead facts to show that MERS exceeded its traditional role involved with lender of money to support a duty).

Further, Plaintiffs have pled no factual allegations from which the court can infer that no adequate remedy at law exists, such as, for example, that an accounting is necessary because the mortgage accounts are so complicated that only a court can discern them.  *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478-79 (1962).

In sum, Plaintiffs are not entitled to an equitable accounting; indeed, if they are able to state a claim upon which relief may be granted, they may seek such information through discovery.  The court therefore GRANTS Defendants' Motion to Dismiss Count III of the FAC.

## C.  Counts IV and V: Injunctive Relief and Punitive Damages

Counts IV and V seek injunctive relief and punitive damages, respectively.  These claims appear to request relief derivative of Plaintiffs' other claims, and are not stand-alone claims.  *See, e.g.*, *Kapahu v. BAC Home Loans Servicing, LP*, 2010 WL 2734774, at *7 (D. Haw. July 8, 2010) (dismissing claim for injunctive relief where other claims were dismissed); *Kang v. Harrington*, 59

Haw. 652, 660, 587 P.2d 285, 291 (1978) ("An award of punitive damages is purely incidental to the cause of action."); *see also Lee v. Aiu*, 85 Haw. 19, 34, 936 P.2d 655, 670 (1997) (holding record contained substantial evidence that defendants engaged in "aggravated or outrageous misconduct" required to impose punitive damages where IIED claim also stood).  Because the court finds that Plaintiffs' other claims must be dismissed for failure to state a claim, the court DISMISSES Counts IV and V as well.

## V.  <u>CONCLUSION</u>

Based on the above, the court GRANTS Defendants' Motion to Dismiss.  Plaintiffs are GRANTED LEAVE to file an amended complaint alleging claims for breach of contract and violation of HRS Ch. 480 by November 5, 2010.  Given the analysis above, however, the court finds that granting Plaintiffs leave to allege violations of HRS Ch. 667 or for equitable accounting would be futile

///

///

///

///

///

///

20

because these claims fail as a matter of law.  Failure to submit a second amended complaint by November 5, 2010 will result in automatic dismissal of this action.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 18, 2010.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Gaspar et al. v. Bank of America, N.A., et al.*, Civ. No. 10-00323 JMS/BMK, Amended Order Granting Defendants' Motion to Dismiss